IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-01383-SKC

THE ESTATE OF SUSANNE BURGAZ, by and through personal representatives
Erika Zommer, Kristian Arnold, and Ameilia Eudailey;
ERIKA ZOMMER, individually;
KRISTIAN ARNOLD, individually; and
AMELIA EUDAILEY, individually;

       Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS FOR JEFFERSON COUNTY COLORADO;
JEFF SCHRADER, in his official capacity;
PETRINA PESAPANE, individually; and
JOSEPH SCALISE, individually;

       Defendants.

---

## ORDER RE: DEFENDANTS' MOTION TO DISMISS [#21][1]

---

This order address Defendants' Motion to Dismiss Amended Complaint [#21.] Defendants' Motion seeks dismissal of the First Amended Complaint ("FAC"). [#19.] The Court reviewed the Motion, all related briefing, the entire record, and applicable law. No hearing is necessary. For the following reasons, the Court GRANTS the Motion.

---

[1] The Court uses "[#__]" to refer to specific docket entries in CM/ECF.

## A. BACKGROUND[2]

This case arises from the tragic death of Suzanne Burgaz while detained at the Jefferson County Sheriff's Office Detention Facility ("Detention Facility"). On August 30, 2017, Ms. Burgaz was booked into the Detention Facility. [*Id.* ¶2.] During booking, it is alleged staff learned Ms. Burgaz was "red-flagged" as a suicide risk and the system noted a previous history of mental illness and substance abuse. [*Id.*] Ms. Burgaz also walked with the assistance of a walker placing her at a higher risk for injury and self-harm. [*Id.*] As a result, Ms. Burgaz was assigned to the Special Housing Unit ("SHU") – an area within the Detention Facility specifically designed for suicidal detainees and others with pressing medical needs. [*Id.*] The next day, Ms. Burgaz appeared in court and the judge ordered her released. [*Id.* ¶3.] Ms. Burgaz was transported back to SHU while she awaited release. [*Id.*]

Later that evening, Ms. Burgaz was moved to the SHU dayroom. [*Id.* ¶83.] The dayroom is located adjacent to the SHU control room along the same corridor as other cells and is monitored through video surveillance. [*Id.* ¶57.] Detainees can use the dayroom in limited circumstances for recreational purposes. [*Id.* ¶58.] The dayroom door has a window with "frosted" coating which obscures the view into the room from the hallway, aside from a small viewing pane. [*Id.* ¶60.] The dayroom contained a wall-mounted television with cords, cables, and a bracket. [*Id.* ¶62.]

---

[2] The Court accepts the well-pleaded facts as true and views the allegations in the light most favorable to the non-movant. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010).

2

Plaintiffs allege the following timeline leading to Ms. Burgaz' death. Around 9:03 p.m., Ms. Burgaz spoke with Defendant Deputy Petrina Pesapane regarding her release status. [*Id*. ¶85.] Deputy Pesapane went to the control room and discovered Ms. Burgaz had two warrants from another jurisdiction and was therefore ineligible for release. [*Id*. ¶85.] At 9:05 p.m., Deputy Pesapane returned to the dayroom window and informed Ms. Burgaz she was ineligible for release and would remain detained. [*Id*. ¶86.] Deputy Pesapane escorted Ms. Burgaz to her cell to retrieve legal paperwork, and after allowing her to gather some of her belongings, escorted her back to the dayroom at approximately 9:09 pm. [*Id*. ¶87.] At 9:17 p.m., Ms. Burgaz started banging on the dayroom door to get a deputy's attention, but no one responded. [*Id*. ¶91.] At 9:22 p.m., Ms. Burgaz began fashioning a noose from television wires and cords in the dayroom. [*Id*. ¶93.] Between then and 9:29 p.m., Ms. Burgaz twice attempted to hang herself with the noose, failing each time. [*Id*. ¶95.] But she succeeded on a third attempt. [*Id*. ¶96.] Deputies discovered Ms. Burgaz' hanging body at 10:00 p.m. [*Id*. ¶97.] She died two days later after medical providers removed her from life support. [*Id*. at ¶13.]

Plaintiffs allege between the time Ms. Burgaz began fashioning the noose and her subsequent hanging, Deputy Joseph Scalise conducted a walk-through. [*Id*. ¶99.] Specifically, they allege Deputy Scalise began his walk-through at 9:25 p.m. and ended it at 9:28 p.m. [*Id*. ¶99.] Video surveillance indicates, at the time of his walk-through, Deputy Scalise did not directly observe the dayroom where Ms. Burgaz was

held. [*Id.* ¶101.] It is further alleged he walked past the dayroom just as Ms. Burgaz made her final hanging attempt. [*Id.* ¶102.]

Ms. Burgaz' estate and her three adult children brought the FAC against the Board of County Commissioners for Jefferson County ("County Board"), Sheriff Jeff Shrader in his official capacity, and Deputies Pesapane and Scalise ("the Deputies") individually.[3] Plaintiffs bring a 42 U.S.C. § 1983 claim alleging deliberate indifference to serious medical needs under the Fourteenth Amendment against the Deputies (First Claim for Relief), a *Monell* claim against the County Board and Sheriff Shrader (Second Claim for Relief), a negligence/wrongful death claim against the County Board and Sherriff Shrader, and a survival claim against all Defendants.

## B. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

Defendants seek dismissal of the claims against them under Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The *Twombly/Iqbal* pleading standard requires courts take a two-prong approach to evaluating the sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or are

---

[3] Plaintiffs filed their original complaint on May 14, 2019. [#1.] They filed the FAC August 30, 2019. [#18.]

4

mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). In other words, the court strips the complaint bare of the deficient allegations and determines whether, what is left, plausibly states a claim for relief.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id*. If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, (10th Cir. 2008) (quoting *Twombly*, 550 at 570). The standard is a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that

5

recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## B.     Qualified Immunity

The Deputies have raised the qualified immunity defense. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Qualified immunity is "immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

In resolving a motion to dismiss based on qualified immunity, the court must consider "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. The plaintiff bears the burden of showing facts and law to establish the inference that the defendant violated a clearly established federal constitutional or statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). If the plaintiff fails to satisfy either prong, the defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. The court

has the discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

As to the first prong, "[i]f no constitutional right would have been violated were the allegations established," the inquiry is at an end. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong — whether the right was clearly established — must be considered "in light of the specific context of the case, not as a broad general proposition." *Id*. An official's conduct "violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing is violating that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

## C.  ANALYSIS

### 1.  Claims Against the County Board

As an initial matter, in their Response, Plaintiffs agreed to voluntarily dismiss the County Board as a party to this case. [#22 p.21.] The Court agrees the County Board is an improper party since Sheriff Shrader is a named defendant in his official capacity. *See Estate of Blodgett v. Correct Care Solutions, LLC*, Civ. No. 17-cv-2690-WLM-NRN, 2018 WL 6528109, at *8 (D. Colo. Dec. 12, 2018) ("Under Colorado law, a board of county commissioners and a sheriff in the same county are distinct public entities . . . a board of county commissioners has no control over the sheriff's

7

employees and is not liable for negligent acts of the sheriff's employees.") Accordingly, the County Board is DISMISSED and the Motion is GRANTED in this respect.

Likewise, Plaintiffs have agreed to voluntarily dismiss the survival claim (Fourth Claim for Relief) against the Deputies. [#22. p. 14 n. 2.] The Fourth Claim for Relief, therefore, is DISMISSED against the Deputies and the Motion is GRANTED in this respect.

### 2.      **Fourteenth Amendment Claim against the Deputies**

The Estate brings a claim against the Deputies in their individual capacities alleging deliberate indifference to Ms. Burgaz' serious medical needs, in violation of the Fourteenth Amendment.

#### A.      **Objective Prong**

State officials violate a pretrial detainee's Fourteenth Amendment Due Process rights "when they are deliberately indifferent to an inmate's serious medical needs." *Estate of Vallina v. County of Teller Sheriff's Office*, 757 Fed. App'x 643, 646 (10th Cir. 2018). The Tenth Circuit applies the same standard for deliberate indifference claims brought by pretrial detainees under the Fourteenth Amendment as it applies to Eighth Amendment claims brought by prisoners. *Id*. Under that standard, deliberate indifference has both an objective and subjective component. *Id*. Here, Defendants concede the FAC plausibly alleges the objective prong. And the Court agrees. [#21 p. 6.] *See DuBois v. Payne Cty. Bd. of Comm'rs*, 543 Fed. App'x.

841, 846 (10th Cir. 2013) ("the risk of, or potential for, suicide involves a sufficiently serious medical need and/or harm such that the objective prong . . . is met.")

### B.  Subjective Prong

The Court turns its attention to whether Plaintiffs have plausibly alleged the subjective prong. This prong is satisfied when an official "knows of and disregards an excessive risk to a detainee's health or safety." *Id.* In this context, it requires the defendant have knowledge the specific inmate presents a substantial risk of suicide. *Id.* (quoting *Cox v. Glanz*, 80 F.3d 1231, 1250 (10th Cir. 2015)). The main inquiry here is on whether plaintiff plausibly alleged facts supporting the subjective prong and the mental state of each individual defendant. *DuBois*, 543 Fed. App'x. at 846. The prong is a question of fact subject to demonstration in the usual ways, including inferences from circumstantial evidence. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The FAC must contain sufficient facts to plausibly allege each Deputy knew Ms. Burgaz presented a substantial risk of harm/suicide and that they each disregarded the risk by failing to take reasonable measures to abate it. *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10h Cir. 2009).

As mentioned above, when examining a complaint under Rule 12(b)(6), courts disregard a complaint's conclusory statements to determine whether the remaining factual allegations plausibly allege a claim. *Khalik*, 671 F.3d at 1191. Doing that here, the Court ignores these conclusory allegations from the FAC as they pertain to the Deputies (whether collectively or individually): ¶¶50, 53-56, 64, 88 (re: "obviously

despondent"), 89, 105, 108, 112, 114, 115 (re: allegations made after the comma), 116 (second sentence), and 134-36. [#19.] When considering the remaining factual allegations without reference to these conclusory statements, the FAC fails to plausibly allege the subjective component against either of the Deputies.

Much of what the FAC alleges concerning the characteristics of individuals who present a higher risk of self-harm, the information in the Tiburon system about Ms. Burgaz, her assignment to the SHU, the Detention Facility's protocols for inmate safety and its history of suicides by hanging, etc., are ultimately general allegations without sufficient factual allegations to plausibly tie the Deputies to those general allegations. For example, for all the various allegations about Ms. Burgaz being red-flagged in the Tiburon system, there are no factual allegations (beyond mere conclusions) that either Deputy accessed that system or otherwise was informed of her red-flag status. This and the other conclusory allegations observed by the Court, *supra*, are so general they encompass a broad swath of conduct or a wide range of assumed knowledge, and therefore, fail to nudge the deliberate indifference claim "across the line form the conceivable to plausible." *Twombly*, 550 U.S. at 570.

Those allegations in the FAC which are not conclusory fail to plausibly allege the Deputies either knew or drew the inference that Ms. Burgaz, specifically, presented a substantial risk of suicide. *See Cox v. Glanz*, 800 F.3d 1231, 1250 ("in order for any defendant . . . to be found to have acted with deliberate indifference, he need to first have knowledge that the specific inmate at issue presented a substantial

risk of suicide"). Further the Deputies are not trained medical staff; thus, even the allegation Deputy Pesapane delivered bad news to Ms. Burgaz about her ongoing detention that may have objectively upset her, is insufficient to plausibly allege the requisite state of mind vis-à-vis Deputy Pesapane to support the subjective prong of the deliberate indifference claim. *Cf. Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) (noting even in the medical context an inadvertent failure to provide adequate medical care does not give rise to a constitutional violation).

The Fourteenth Amendment Claim (First Claim for Relief) is DISMISSED against the Deputies. For the reasons stated, the FAC fails to plausibly allege a constitutional violation thus entitling them to qualified immunity. And because of this dismissal, the *Monell* claim (Second Claim for Relief) against Sherriff Shrader is also DISMISSED. *Lindsey v. Hyler*, 918 F.3d 1109, 1117 (10th Cir. 2019) ("[a] municipality may not be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights.") (citation omitted).

### 2. State Law Claims

Plaintiffs' remaining claims are state law claims: negligence/wrongful death (Third Claim for Relief) and a survival claim (Fourth Claim for Relief). The Court has dismissed the federal law claims over which it had original jurisdiction. Therefore, the Court dismisses the state law claims, without prejudice, under 28 U.S.C. § 1367(c)(3).

\*   \*   \*

Defendants' Motion to Dismiss Amended Complaint [#21] is GRANTED. All claims are dismissed, without prejudice.

DATED: January 19, 2021.

                                                BY THE COURT:

                                                S. Kato Crews
                                                U.S. Magistrate Judge